## SUPREME COURT

### THRESSA RATHBUN agt. JOSEPH A. RATHBUN.

A decree of *divorce* for adultery, will be granted to the plaintiff, where it appears
that the defendant committed the act of adultery, while he was of sound mind,
although subsequently he became insane, and was for several years previous to,
and at the time of the commencement of the action and the granting of the
decree, a *lunatic.*

*Erie Special Term, November,* 1870.

MOTION, upon the report of the referee, for final judg-
ment of divorce, on the ground of adultery. The referee
reports facts ordinarily requiring a judgment of divorce, and
the additional fact that the defendant is a lunatic, and the
evidence shows that he was insane—of unsound mind—at
the time this action was commenced, and for several years
previous.

The adultery was committed by the defendant prior to
his insanity. Upon an application to the court at special
term, James C. Beecher, an attorney and counsellor of the
court, was appointed guardian *ad litem* for the defendant,
and the defendant appeared by such guardian, and answered
that for five years and upwards, last past, he had been, and
at the time the action was commenced, was and now is a
lunatic, and of unsound mind. 2d. That he is a lunatic and
of unsound mind, and ignorant of the matters and things
alleged in the complaint, and he submits his interest in the
actton to the protection of the court. 3d. He denies each
and every allegation of the complaint, relative to his having
committed adultery.

R. SAUNDERS, *for plaintiff.*

JOSEPH C. BEECHER, *guardian ad litem, for defendant.*

Rathbun agt. Rathbun.

MARVIN, J.—It was said, upon the argument, that no case, in print, could be found, except *Mordaunt* agt. *Mordaunt*, decided the present year in England ; *Broadstreet* agt. *Broadstreet* (7 *Mass.*, 474), was cited. It was decided in 1811, and is reported in less than ten lines. It differs from the present case, in this ; in that case, the defendant was insane, at the time it was alleged the adultery was committed and so continued, " and the insanity being proved to the satisfaction of the court, the libel was dismissed." No authority was cited. The case is a clear authority, for the position that insanity, at the time the act of adultery was committed, constitutes a full defense in an action for a divorce on the ground of adultery.

The case of *Mordaunt* agt. *Mordaunt* was tried in the divorce court, in England, in February, 1870, upon the issue whether Lady Mourdant, the defendant, was at the time the action was commenced, of sound mind, and whether she has since that time, been of sound mind. The verdict was that at the time the action was commenced, she " was totally unfit to instruct her attorney, and has been unfit ever since." The court then ordered a stay of all proceedings in the suit until the defendant should recover her mental capacity. Upon appeal to the full court, the order was affirmed (*see Albany Law Journal, vol.* 1, 492, *or No.* 25). It is said in the note, in the journal, that the majority of the court, on the appeal, rested their opinion mainly upon the analogy of the case to a criminal proceeding. Unsoundness of mind—insanity—has always been regarded as a great calamity, and those thus afflicted, at the time the criminal act was done, are not amenable to punishment. They are objects of commiseration and entitled to the sympathy of those blessed with " sound minds and memory."

Coke tersely says, " a mad man is only punished by his madness." Insanity arrests the trial, though it may not be claimed, that insanity existed at the time the criminal act was done, one reason assigned, being that the insane per-

son is incompetent to make his defense. Perhaps, if he were sane he could establish his innocence, or furnish good reasons why he ought not to be convicted. The rule applies where the insanity intervenes the conviction and judgment, and in such case judgment is not to be given; and so if after judgment, then execution is to be suspended (*see* 4 *Black. Com.*, 24—395). In short, the state will take no steps in the prosecution of one charged with crime, while he is of unsound mind. This was the principle, applied, by way of analogy, to the case of *Mordaunt* agt. *Mordaunt*, and the proceedings were stayed, and the guardian *ad litem* for the defendant, asks for a like order in this case. In my opinion the proceedings in the action should not be stayed. The plaintiff is entitled to the relief she demands. In this state the relation between husband and wife is established by contract, and the law carefully regulates the rights of each party to the contract. If one of the parties commits adultery, the other party has a right to be relieved from the contract; to be discharged from all the obligations imposed by the marriage relation.

The married relation ought not to be dissolved, in case the act of adultery was committed at a time when the party committing the act was of *unsound mind*—insane— and the *Mass.* case (*supra*), is authority for this. This position rests upon sound principle. ' The parties to the contract take the risk of sickness, and the calamities inflicted upon them by Providence. Insanity may have led to the commission of the act. But when the act of adultery was committed prior to the insanity, I am not able to see why the aggrieved party should not have redress. The state will forbear to prosecute a subject or citizen, for an alleged crime, while such citizen is of unsound mind; and the reason assigned, viz.: that he is incompetent to make his defense, was, at one time, very potent, when, by the common law, the party accused of crime, was not allowed counsel, but was to make his defense unaided by any one. The

reason of the rule is still valid, though he may now have the assistance of counsel. It is important that his mind be sound so that he can advise with and instruct his counsel. There is an addition, and as I think, better reason, why the state will not proceed in the prosecution, though it may have entire confidence that the court and jury will come to correct results, touching the commission of the crime charged; the state will not inflict punishment upon one who is insane. *Blackstone* says (*vol.* 4, 25), "In the bloody reign of Henry the VIIIth, a statute was made, which enacted that if a person being *compos mentis*, should commit high treason, and after fall into madness, he might be tried in his absence, and should suffer death, as if he were of perfect memory." But this savage and inhuman law was repealed. * * * * For, as observed by Sir Edward Coke (3 *Inst.*, 6), the execution of an offender is, for example— *ut forma ad pancos, metus ad omnes perveniat,* but so it is not when a mad man is executed, but should be a miserable spectacle, both against law, and of extreme inhumanity and cruelty, and can be no example to others." Now, why should these principles, arresting the trial, be applied, when adultery has been committed by one of the parties to the contract of marriage, while such party is of sound mind? The state has no ground of complaint that a crime has been committed, but the *aggrieved* party has *private, personal* rights, Shall the aggrieved party be deprived of his or her remedy, because the other party has, since the commission of the wrong, become insane? Can it be reasonably claimed that courts and juries cannot be trusted, in such a case, to ascertain the truth of the averment of adultery?

The action of the courts is not arrested in civil cases touching the rights and liberties of persons of unsound mind. Such persons are not liable on their contracts entered into when insane, because they have not capacity to make an agreement. They are liable upon all contracts entered into prior to the insanity. They are liable to respond in

damages for their *tortious* acts committed while insane.
(*Broome's Leg. Max.* 150 ; *Krom* agt. *Schoonmaker,* 3 *Barb.*,
647.)

· The investigation or trial proceeds and the ordinary
remedies are applied notwithstanding the insanity of the
party. ( *See Bush* agt. *Pettibone,* 4 *Wend.,* 300, *and cases
cited in the opinion.*) The law has made ample provision
for the protection of the rights of the lunatic, by the
appointment of persons to make defense. Why may not
the rights of one charged with adultery prior to his lunacy
be in like manner protected ?

The law of divorce in England is very different from the
law on that subject, in this state. Until very recently, the
ecclesiastical courts had exclusive jurisdiction of divorces,
and a divorce, *a vinculo matrimonii,* was only allowed for
some cannonical cause of impediment *before* marriage.
Whatever occurred after marriage was only a ground of
divorce *a mensa et thoro,* that is, a separation. Adultery
was only a cause of separation from *bed and board.* (*See
Black. vol.* 1, 400—1.)

The law of divorce, in this state is declared by statute.
Idiocy or lunacy, at the time of the marriage, is a cause
for annulling the marriage. Adultery is a cause for the
decreeing of a divorce and dissolving a marriage. (*See* 2
*R. S.* 144, § 38). This is so by statute and not by com-
mon law. The reasons why the state will not prosecute
persons during their insanity, charged with crime com-
mitted while sane, have been shown, and in my opinion
they ought not to be applied, by way of analogy, or other-
wise, in civil actions for a divorce, in the language of the
statute, *dissolving* the marriage. The analogy between the
remedies given in cases of lunacy, is much more natural
and reasonable. *Mordaunt* agt. *Mordaunt,* is not authority
here, nor is it applicable to the system of law, touching
divorces, existing in this state. The plaintiff should have ·
judgment dissolving the marriage.