Benjamin Brenner, J.
Benjamin Mitchell, deceased, was committed as mentally ill on February 21, 1923. His nephew sues as next of kin, pursuant to section 1137 of the Civil Practice Act, to annul the uncle’s marriage" to defendant on July 9, 1923, on the ground that he was then insane.
The defendant was herself committed as mentally ill some nine years ago and, being still so confined, is here defended by a court appointed guardian ad litem. Benjamin Mitchell’s estate consists of accumulated veteran’s disability payments, *560 totaling some $10,000. An annulment of his marriage to defendant would render the defendant a public charge and endanger her Avidow’s allotment payments by the Veterans’ Administration. It would definitely bar any possibility for her private hospital confinement.
The deceased was a midgrade moron whose illness or psychosis Avhen committed to a mental hospital was described as a state of excitement. A further diagnosis was to the effect that his remote memory Avas fairly good and his recent memory apparently good. A committee was appointed for him on April 18, 1923. He was paroled on convalescent leave two months later on June 20, 1923 because of a “ remission,” or return to his pre-excitement state. A month later he married the defendant. On August 17,1923, or about a month folloAving the marriage, he Avas again admitted to a mental hospital where he remained until his decease in November, 1955.
The evidence consists of rather meagre testimony on the part of the plaintiff, who scarcely knew his uncle, and of testimony by a nontreating psychiatrist, based wholly upon hospital records. Neither the plaintiff nor the psychiatrist supplied any facts as to the decedent’s mental capacity on the day the marriage was contracted. Plaintiff’s case thus rests on a presumption of continuance of decedent’s insanity on the day of marriage based on his earlier commitment and the appointment of a committee in his behalf. The guardian ad litem, being unable to produce the defendant as a Avitness, rests her defense on a presumption of sanity on the day of marriage because of the deceased’s “ remission ” and parole after such commitment.
The decedent’s midgrade moronic state is, of course, no ground for nullifying the marriage if this was then his normal, nonpsychotic mental condition. Since his illness consisted of a state of excitement, it is plaintiff’s burden to establish that when he married the deceased suffered from such excitement and was unable mentally to understand the nature and effect of his marriage (Meekins v. Kinsella, 152 App. Div. 32; Banker v. Banker, 63 N. Y. 409; De Nardo v. De Nardo, 293 N. Y. 550).
True, plaintiff is aided by a presumption of law. Having previously been adjudicated insane, the decedent’s mental illness is presumed to have continued and to have subsisted on his marriage date (Jacobs v. Jacobs, 127 Misc. 505, affd. 217 App. Div. 753; Matter of Prentice, 110 Misc. 456). But a presumption of law giving rise to an inference of fact is not conclusive and may be rebutted by evidence in opposition (Anonymous v. Anonymous, 166 Misc. 861). The opposing evidence here is that there *561 was a “ remission ” a month before the marriage which, while not a cure, was a return to his normal, pre-excitement state. The ‘ ‘ remission ’ ’ being of a later date than the commitment and appointment of the committee, a presumption of continuance of the “ remission ” and nonpsychotic condition also flows therefrom which, to me, appears to be the stronger of the two presumptions (Palmer v. Palmer, 162 N. Y. 130). The latter presumption supplies the defendant’s rebuttal and overcomes the inference of continued insanity. The ‘ ‘ remission ’ ’ itself is also substantial evidence of at least temporary relief from the illness adequate to destroy the presumption of continued insanity. These conflicting presumptions are further subjected to the strongest of all presumptions as affecting a contract of marriage, namely, the presumption favoring validity of the marriage (Weinberg v. Weinberg, 255 App. Div. 366; Smith v. Smith, 194 App. Div. 543), a presumption of validity which surmounts all doubt in favor of the defendant.
A court of equity, asked to base a finding upon a presumption of law, cannot shut its eyes to the objective of the lawsuit and the consequences thereof. To do equity it must consider the consequences of the attack on the wife’s marital status and the fact that the attack is made while she is incapacitated and unable to speak for herself. Her silence cannot change the circumstance that for 25 years and until she herself was stricken some 9 years ago, she knowingly remained the wife of an insane husband. This status has remained unchallenged for 34 years. Fortunately it may be preserved for this tragic defendant by strong presumptions and by equities in her favor.
Judgment for the defendant.